UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALVIN DONALD MESCHKE<br>Individually and as next friend of<br>G.T.M. and K.E.M., minors,<br>and KIMBERLY PIASTA MESCHKE,<br>Heirs of T.M,<br><br>    Plaintiffs,<br><br>vs.<br><br>FORD MOTOR COMPANY, and<br>THOMPSON COUNTRY FORD-<br>MERCURY, LTD.,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. _____ |

## NOTICE OF REMOVAL

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Comes now, FORD MOTOR COMPANY (hereinafter "FORD"), defendant in the cause styled *Alvin Donald Meschke, Individually and as next friend of G.T.M. and K.E.M.,[1] minors, and Kimberly Piasta Meschke, Heirs of T.M., Plaintiffs, v. Ford Motor Company and Thompson Country Ford-Mercury, Ltd., Defendants,* originally pending as Cause No. 30720 in the 12th Judicial District Court, Grimes County, Texas, and pursuant to the terms and provisions of 28 U.S.C. §§1441(a) and 1446(b), hereby respectfully files this Notice of Removal of said cause to the United States District Court for the Southern District of Texas, Houston Division, and as grounds therefore, would respectfully show the Court as follows:

---

[1] In accordance with General Order No. 2004-11, In the Matter of Protecting Personal Privacy in Public Case Files, the names of the minor children have been redacted from the styled cause and replaced with their initials.

# I.
## NATURE OF THE CASE

1.      This products liability action arises from a single vehicle accident which allegedly occurred on September 17, 2006, on Highway 6 outside of Navasota, Texas. Plaintiff Alvin Meschke was driving a 2006 F-250 truck ("subject vehicle") when he allegedly lost control of the vehicle as it traveled across Highway 6 and entered the median, where it rolled over on its roof.[2] Plaintiff further alleges that along with Alvin Meschke, his wife, Kimberly Meschke, sat in the front passenger seat and their children K.M, G.M., and T.M. sat in the rear seat. According to Plaintiffs' pleading, T.M. was pronounced dead at the scene of the accident.

2.      Plaintiffs filed their Original Petition on January 30, 2007. Said petition was served on FORD on February 5, 2007.[3] Plaintiffs seek to recover actual and exemplary damages from FORD under strict product liability. Plaintiffs have made claims against THOMPSON COUNTRY FORD-MERCURY, LTD. (hereinafter "THOMPSON COUNTRY") under theories of strict products liability, negligent misrepresentations, misrepresentations under the DTPA, and negligent marketing/negligent failure to warn.

3.      Defendant FORD MOTOR COMPANY now timely files this notice of removal based on the improper joinder of the in-state defendant, THOMPSON COUNTRY. Because Texas law precludes liability against a seller of a product and THOMPSON COUNTRY is being sued as a retailer of an allegedly defective product, this removal is both proper and timely.

---

[2] Plaintiffs' Original Petition, a true and correct copy hereto attached as Exhibit A.
[3] Service of Process Transmittal, a true and correct copy hereto attached as Exhibit B.

## II.
## DIVERSITY JURISDICTION

4. Pursuant to 28 U.S.C. §1441, FORD MOTOR COMPANY removes this action to the district court of the United States for the district and division embracing the place where this action is pending. In support of this Notice, FORD would show there is complete diversity of citizenship between the Plaintiffs and the only properly named Defendant (see Section A below) as both Plaintiffs and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.00 (See Section B below). Removal is appropriate as it has been sought within (30) thirty days of FORD receiving notice of this suit and because it has been less than one year since this action was originally commenced. See 28 U.S.C. §1446(b).

5. While co-defendants must consent to the removal of a case, when improper joinder has been alleged, "application of this requirement to improperly joined parties would be nonsensical, as removal in these cases is based on the contention that no other proper defendant exists." *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5$^{th}$Cir. 1993). Thus, because FORD alleges the improper joinder of THOMPSON COUNTRY, it is not required to consent in this removal.

A. **DIVERSITY OF CITIZENSHIP.**

6. At the date of the filing of this action and at all times thereafter, up to and including the present, Plaintiffs are citizens of Texas, and Defendant FORD MOTOR COMPANY is a corporation duly organized under the laws of Delaware with its principal place of business in Detroit, Michigan. Defendant THOMPSON COUNTRY FORD-MERCURY, LTD. is duly organized under the laws of Texas with its principal place of business in Navasota, Texas. However, as set forth below, this named Defendant has been improperly joined in an attempt to defeat this court's diversity jurisdiction. Specifically, Texas law has been amended to preclude product sellers

from liability merely for distributing a product. Therefore, since there is no chance of recovery against THOMPSON COUNTRY, its state of citizenship is irrelevant in determining the propriety of removal. Accordingly, complete diversity of citizenship exists between the Plaintiffs and the only remaining Defendant, FORD MOTOR COMPANY.

### 1. STANDARD OF REVIEW IN IMPROPER JOINDER CASES.

7. To establish improper joinder,[4] the party seeking removal must demonstrate either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5$^{th}$Cir. 2003). Under the second prong, the standard is whether the defendant has demonstrated that there is <u>no reasonable basis</u> to predict that the plaintiff might be able to recover against the in-state defendant. "[A] removing defendant [need not demonstrate an absence of *any possibility* of recovery in state court.... the defendant must demonstrate only that there is *no reasonable basis* for predicting that the plaintiff will recover in state court." *Gray ex. rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 405 (5$^{th}$Cir. 2004) (emphasis in original).

8. In determining whether the plaintiff has a reasonable basis for recovery on at least one claim under state law, the district court is *limited to the causes of action and allegations asserted in the complaint. Rubin v. Daimlerchrysler Corp.*, 2005 WL 1214605 (S.D.Tex. 2005) (emphasis added). The removing party may not rely on causes of action or new theories of recovery not alleged in the latest petition on file in the state court when the case is removed. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5$^{th}$Cir. 1999); *Alonso ex rel. Estate of Cagle v.*

---

[4] The Fifth Circuit has adopted the "improper joinder" as the more appropriate term for the concept formerly identified as "fraudulent joinder." *Smallwood v. Illinois Cent. Rail. Co.*, 385 F.3d 568, 571 n. 1 (5$^{th}$Cir. 2004) (en banc). Although the terms substantively carry the same meaning, improper joinder is more consistent with the statutory language and thus is preferred. *Id.*

*Maytag Corp.*, 356 F.Supp.2d 757, 761 (S.D.Tex. 2005) (noting that although a court may consider post-removal evidence, it may not consider new theories or causes of action.).

    2.    PROCEDURE FOR DETERMINING A "REASONABLE BASIS" FOR RECOVERY.

9. The Fifth Circuit has outlined the two methods available to a district court in deciding a motion to remand based on improper joinder: (1) court may conduct a Rule 12(b)(6)-type analysis looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant; or (2) after examining the pleadings, the court may determine it is appropriate to pierce the pleadings and conduct a summary inquiry. *Smallwood*, 385 F.3d at 573-74. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. A summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. *Id.*

    3.    FACTUAL ALLEGATIONS ARE NECESSARY UNDER A 12(B)(6)-TYPE INQUIRY.

10. In *Rios*, the Fifth Circuit reiterated the proper standard for evaluating Rule 12(b)(6) motions. *Rios v. City of Del Rio*, 444 F.3d 417, 420-421 (5$^{th}$Cir. 2006.) According to *Rios*, the pleadings must contain either direct allegations on every material point necessary to sustain a recovery or else contain allegations from which an inference fairly may be drawn that sufficient evidence will be introduced at trial. *Id.* Conclusory allegations or legal allegations masquerading as factual conclusions will not suffice. *Id.* at 421, *citing Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5$^{th}$Cir. 1993). The Court is not required to conjure up unpled allegations or construe elaborately arcane scripts to save a complaint. *Id., citing Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1$^{st}$Cir. 1988). Thus, the Fifth Circuit has consistently held that conclusory allegations and unwarranted deductions of fact are not admitted as true for

purposes of ruling on a 12(b)(6) motion. See *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5$^{th}$Cir. 2003); *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5$^{th}$Cir. 1992); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5$^{th}$Cir. 2000) ("In order to avoid dismissal for failure to state a claim, however, ***a plaintiff must plead specific facts, not mere conclusory allegations. We will thus not accept as true conclusory allegations or unwarranted deductions of fact***").

11.     In addition to the Fifth Circuit's decisions in *Smallwood* and its progeny, other federal courts have described the standard of determining improper joinder as (1) not pleading a factual basis for an element of the plaintiff's claim against the non-diverse defendant; (2) pleading only a legally insufficient factual basis for an element of the claim against the non-diverse defendant; and (3) pleading the "status" of the non-diverse defendant when in fact the non-diverse defendant lacks such "status." *Wells' Diary, Inc. v. American Indus. Refrigeration, Inc.*, 157 F.Supp.2d 1018, 1036-37 (N.D. Iowa 2001); *Morris v. Princess Cruises, Inc.,*, 236 F.3d 1061, 1067-68 (9$^{th}$Cir. 2001) (because the plaintiffs negligent misrepresentation claim against the non-diverse plaintiff was based on representations that were not "material" or sufficiently specific to constitute more than "puffing," and thus the representations were not actionable as a matter of law, and, moreover, that failing in the pleadings was obvious under applicable state law, the non-diverse defendant was "fraudulently joined"); *Johnson v. Heublein, Inc.*, 227 F.3d 236, 240 (5$^{th}$Cir. 2000) (the plaintiffs *failed to allege any facts,* such as "alter ego" liability for a corporation's misconduct, that would reasonably demonstrate that they had an independent or derivative cause of action against the non-diverse defendant).

12.     Based on the foregoing, it is clear that the standard for determining improper joinder is based on the Plaintiffs' pleading *specific facts* sufficient to support an exception to liability under

Texas law against THOMPSON COUNTRY. Because Plaintiffs have omitted pleading any such facts, there is *no reasonable basis* for predicting that the Plaintiffs will recover from THOMPSON COUNTRY in state court.

### 4. TEXAS LAW REQUIRES A SELLER'S LIABILITY BE BASED UPON A STATUTORY EXCEPTION.

13. Plaintiffs allege they purchased the 2006 F-250 from THOMPSON COUNTRY a few months prior to the accident:[5]

> "Thompson Country, in turn, sold the F250 to the Meschke family in May of 2006. Thompson Country is engaged in the business of distributing or placing Ford vehicles into the stream of commerce for commercial purposes."[6]

In other words, THOMPSON COUNTRY is being sued as the seller of the 2006 Ford F-250, thus this lawsuit is governed by chapter 82 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE.[7] Chapter 82 defines a "products liability action" as "any action against a manufacturer or seller for recovery of damages arising out personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories." TEX.CIV.PRAC. & REM. CODE §82.001(2).

14. Section 82.003(a) further provides that "[a] seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves...." one of the several enumerated exceptions. TEX.CIV.PRAC & REM. CODE. §82.003(a). A "seller" under this section is broadly defined:

---

[5] Exhibit A, ¶ 7.
[6] *Id.*, ¶ 15.
[7] This chapter applies to actions filed on or after September 1, 2003.

>   (3) "Seller" means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof.

TEX. CIV. PRAC. & REM. CODE §82.001(3). Thus, Defendant THOMPSON COUNTRY is a "seller" under the statute and as such is only liable for placing a product in the stream of commerce under the following legislatively limited exceptions:

> (1) The seller *participated in the design* of the product;
> (2) The seller *altered the product* in such a way *as to cause the damages;*
> (3) The seller *installed or assembled the product* incorrectly causing the damage;
> (4) The seller *controlled the content of deficient warnings* and the harm resulted from the deficient warnings;
> (5) The seller made *false factual representations or warranties* about the product and the injury would not have occurred had the representation been true;
> (6) The seller *"actually" knew the product was defective;* or,
> (7) The manufacturer is *either insolvent or not subject to the court's jurisdiction.*

*see* TEXAS CIVIL PRACTICES & REMEDIES CODE §82.003 (emphasis added).

15. Therefore, a product "seller' or distributor is no longer strictly liable for merely distributing a defective product unless the manufacturer is insolvent or not subject to the jurisdiction of Texas courts. Otherwise, to hold a seller liable, a person must establish an *independent act* by the seller, other than simply distributing the product that was a cause of the claimed damages to satisfy one of the statutory exceptions. THOMPSON COUNTRY cannot be held liable for merely distributing the F250 as this is no longer a viable claim under Texas law.

5.     PLAINTIFFS' CLAIMS AGAINST SELLER DEFENDANT LACK ANY FACTUAL BASIS.

    (I)     THOMPSON COUNTRY'S PURPORTED "ACTUAL KNOWLEDGE" OF DEFECTS.

16.     Plaintiffs allege various claims against THOMPSON COUNTRY, but lacking any factual bases, they fail to trigger any of statutory exceptions for holding this local defendant liable. First, Plaintiffs claim THOMPSON COUNTRY "knew, or in the exercise of ordinary care should have known" of the alleged defects in the subject vehicle, specifically the "excessive risk that the truck would rollover, even in normal driving conditions."[8] To support the conclusory allegation that THOMPSON COUNTRY had knowledge of these purported defects, Plaintiffs propose the following:[9]

> (1) the truck had a warning on the front passenger sun visor that "addressed the rollover defect;"
> (2) the rollover risk was addressed in the owner's manual that THOMPSON COUNTRY provided to the Plaintiffs at the time of sale;
> (3) THOMPSON COUNTRY was "undoubtedly aware that the middle, rear seat lacked both a shoulder seat belt and a protective head reset at the time it sold the truck" because the "absence of these common safety features was visually obvious"; and
> (4) THOMPSON COUNTY knew of the unreasonable and dangerous absence of Electronic Stability Control on the F250 because the feature is offered on other Ford vehicles sold by THOMPSON COUNTRY.

Plaintiffs claim these allegations invoke the provisions of section 82.003(a)(6). TEX.CIV.PRAC. & REM. CODE §82.003(a)(6).

---

[8] *Id.* at ¶ 17.
[9] *Id.*

17. Under this exception, a plaintiff may recover against a nonmanufacturing seller for injuries resulting from a defective product if that seller actually knew of a defect to the product when the seller supplied the product and the plaintiff's harm resulted from the defect. TEX.CIV.PRAC. & REM. CODE §82.003(a)(6). Under the Texas statute, however, liability cannot be based on an allegation that a seller *should have known* of a defect in product. *Rubin*, 2005 WL 1214605 at * 6; *Reynolds v. Ford Motor Co.*, 2004 WL2870079 at *3 (N.D.Tex. 2004) ("The language of section 82.003 clearly requires actual knowledge of the defect on the part of the seller....Section 82.003 makes no reference to what a seller should have known or foreseen."); *Garcia v. Nissan Motor Co., Ltd.*, 2006 WL 869944 (S.D.Tex. 2006).

18. In *Garcia,* plaintiffs sued nonmanufacturing seller alleging the local defendant had actual knowledge of two defects in the 2002 Altima when it sold the product as these features were available on some vehicles but not others: (1) the lack of side-curtain air bag; and (2) the lack of electronic stability. The court found the plaintiff had failed to show that the local defendant knew that these features rendered the vehicle defective. "The latter does not follow, *a priori*, from the former. Under Texas law, a product is not defective merely because it could be safer." *Id.* at *3, *citing Weakley v. Fischbach & Moore, Inc.*, 515 F.2d 1260, 1267 (5$^{th}$Cir. 1975). Citing to the opinion in *Weakley*, the court said:

> "It is one thing to show that the defendant might have designed a safer product; quite another to show that the product he did design was unreasonably dangerous. The defendant is not obliged to design the safest possible product, or one as safe as others make or a safer product than the one he has designed, so long as the design he has adopted is reasonably safe."

19. A defendant's knowledge that certain vehicles could possibly be safer than a vehicle without those features is not equivalent to knowing that the lack of these features rendered the product defective. Additionally, vehicles sold without optional features, such as an electronic

stability control, are not inherently or automatically defective. THOMPSON COUNTRY's purported knowledge of the equipment on its vehicles does not somehow equate to their actual knowledge of a defect rendering the vehicle unreasonably dangerous. A defect consists of more than simply the absence of an alternative design option. For example, to "know" that a product is defective one would have to "know" that the absence of the option renders the product "unreasonably dangerous." See TEX.CIV.PRAC. & REM. CODE 82.005. The factual allegations in this case are no where close to that type of knowledge. Plaintiffs' allegation of purported knowledge is what the Fifth Circuit considers a *conclusory allegation or unwarranted deduction of fact*. See *Collins*, 224 F.3d at 498.

20.  And contrary to this unsupported allegation of actual knowledge of a defect, Defendant THOMPSON COUNTRY was not actually aware of any defect with the subject vehicle and to this day, is unaware of any information that would support any contention that the vehicle was unsafe or defective.[10] There were no representations made by Richard Blue, the ales representative at THOMPSON COUNTRY who spoke to Alvin Meschke when he first came to THOMPSON COUNTRY to look at vehicles, regarding the vehicle's stability, crash characteristics, or maneuverability.[11] While Plaintiffs allege Erlene Owens made factual misrepresentations regarding the subject vehicle, Ms. Owens denies meeting with or speaking to Plaintiffs prior to the purchase of this 2006 F250.[12] Both Owens and Blue further attest that they have no knowledge of any defect with the subject vehicle and to this day believe the vehicle at issue and other 2006 F250 are safe vehicles. Therefore, to so allege that Defendant THOMPSON COUNTRY knew of a "defect" because they sold the vehicle without an optional feature is (1) simply not supported by the facts;

---

[10] See AFFIDAVIT OF RICHARD BLUE, hereto attached as Exhibit C.
[11] *Id.*
[12] AFFIDAVIT OF ERLENE OWENS, hereto attached as Exhibit D.

(2) Congressionally-prohibited; (3) legislatively not actionable under § 82.003 (as discussed above); and (4) weighs against public policy.

21. Finally, to adopt Plaintiffs' line of reasoning for all practical purposes would lead us down a slippery slope where a seller acting merely a conduit could be held liable for nothing more than selling products as is from the manufacturer. There would be tremendous potential for liability against automobile dealerships that have sold millions of cars without electronic stability control and other optional safety features, the absence of which Plaintiffs now claim constitutes a product defect but also could somehow support the claim that every selling dealer "actually knew" the product was defective when it was sold. Further, to adopt Plaintiffs' reasoning would render per se defective an enormous nationwide inventory of new and used vehicles not equipped by the manufacturer with electronic stability control and other optional safety features. At the end of this road of faulty reasoning, sellers would be liable for selling vehicles not equipped with every available option.

### (II) NEGLIGENT MISREPRESENTATION IS NOT ACTIONABLE UNDER THE STATUTE.

22. Plaintiffs allege THOMPSON COUNTRY is liable under section 82.003(a)(5) for "negligently misrepresenting the quality and safety of the Ford F250[.]"[13] This section provides an exception to liability for "express factual representations," which are incorrect and which claimant "relied" upon in obtaining or using the product. TEX.CIV.PRAC. & REM. CODE §82.003 (a)(5). Specifically, Plaintiffs allege THOMPSON COUNTRY's employees said the F250 was "safe," "tough," and "well-built." Aside from the fact that these words are adjectives and not factual statements, mere sales puffery are not actionable misrepresentations. Texas courts have defined "puffery" as an expression of a seller's opinion not made as a representation of fact.

---

[13] Exhibit A, ¶ 25 and ¶ 26.

*Dowling v. NADW Mktg., Inc.*, 631 S.W.2d 726, 729 (Tex.1982); *Autohaus v. Aguilar,* 794 S.W.2d 459, 465 (Tex.App.-Dallas 1990), *denied per curiam,* 800 S.W.2d 853 (Tex.1991). Courts have determined that in the vehicle sales context, a salesman's representation that a vehicle was "the best engineered car in the world" to be too general a statement as a matter of law to be an actual misrepresentation. *Autohaus,* 794 S.W.2d 459. Similarly, representations such as "super," "super fine" and "one of the finest" were also held to be puffing. *Prudential Ins. Co. of America v. Jefferson Associates, Ltd.*, 896 S.W.2d 156, 163 (Tex.1995). Based on the case law, the so-called representations at issue do not go beyond puffing.

23. Moreover, aside from lacking any factual bases for the claim,[14] negligent misrepresentation is not actionable as an exception under the statute. *Rubin*, 2005 WL1214605 *10. As the court in *Rubin* said,

> "Negligent misrepresentation claims do not require actual knowledge of falsity. Section 82.003(a)(6) is an exception that applies if the seller has actual knowledge of a defect when the product is sold. Section 82.003(a)(5) is an exception from the protection for nonmanufacturing sellers that applies if a plaintiff is harmed because of reliance on a seller's incorrect statements about an aspect of the product. The entire rule would be swallowed by allowing liability for negligent misrepresentations."

*Id.*

### (III) DTPA CLAIMS ARE NOT ACTIONABLE AS AN EXCEPTION TO LIABILITY UNDER THE STATUTE.

24. Under the legislative changes of 2003, there is no longer a DTPA claim that exists against a product manufacturer or seller for a defective product, as the statutory language under Chapter 82 does not grant the claimant any such right. As the statutory language clearly and unequivocally states, Chapter 82 ***applies*** to ***"any action*** ....for ***recovery of damages*** arising out

---

[14] See Exhibits B and C.

of *personal injury, death* or property damage allegedly caused by a defective product." TEX. CIV. PRAC. & REM. CODE § 82.001(2). Chapter 82 is exclusive in its language and all-encompassing. The language in the DTPA is equally as clear:

> The provisions of this subchapter are not exclusive. The remedies provided in this subchapter are in addition to any other procedures or remedies provided for in any other law; provided, *however, that no recovery shall be permitted under both this subchapter and another law of both damages and penalties for the same act or practice.*

TEX. BUS. & COMM. CODE §17.43, CUMULATIVE REMEDIES.

25. In fact, Plaintiffs' DTPA claims are *expressly precluded by the language of the DTPA prohibiting such a claim* and *by the absence of language in Chapter 82* granting the claimant the right to bring a claim under the DTPA. The DTPA underwent significant modification in 1995. Included among those changes was a modification of §17.49(e), which now states:

> (e) Except as specifically provided by Subsections (b)[15] and (h)[16], Section 17.50, **nothing in this subchapter shall apply to a cause of action for bodily injury or death or for the infliction of mental anguish**.

Section 17.50(h) cited above specifically permits recovery of *any actual damages* in a personal injury suit *under the narrow exception* when another statute grants claimant the right to bring a particular cause of action under this section. Because this grant is conspicuously absent under Chapter 82, there can be no DTPA claim for economic damages not only in a personal injury suit

---

[15] Section (b) of §17.50 allows recovery of mental anguish damages upon finding that the deceptive act or practice was committed knowingly or intentionally. It is an element of the damages available for an unlawful trade practice, however, not an avenue for establishing a cause of action for mental anguish otherwise expressly excluded by the DTPA.

[16] Section (h) of §17.50 allows recovery of any actual damages where another statute grants a claimant the right to bring a particular cause of action under the DTPA. For example, failure of a product seller to abide by the three-day purchase contract cancellation provisions set forth in TEX. BUS. & COMM. CODE § 39.001, et. seq (Vernon 1997)., is expressly made actionable under §17.46. Likewise, the Health Spa Act (TEX. BUS. OCC. CODE §702.001, et. seq.(Vernon 1997)), would permit the recovery of personal injury damages in cases against health spas violating the Health Spa Act.

under the DTPA but in any product liability action against a seller or manufacturer under Chapter 82.

### (IV) NO FACTS SUPPORTING A NEGLIGENT MARKETING/NEGLIGENT FAILURE TO WARN CLAIM.

26. Finally, Plaintiffs allege a claim against THOMPSON COUNTRY for negligently marketing the F250 "without adequately warning him [Mr. Meschke] about the unreasonably dangerous design defects inherent in the truck."[17] In order to trigger an exception under 82.003(a)(4), Plaintiffs must plead factual allegations that THOMPSON COUNTRY exercised substantial control over the content of a warning or instruction that accompanied the truck; the warning was inadequate; and the Plaintiffs' harm resulted from the inadequacy of the warning. TEX.CIV.PRAC. & REM. CODE §82.003(a)(4). Since Plaintiffs have omitted pleading any facts supporting the application of this exception and this Court is not required to conjure up unpled allegations, there is no reasonable basis for predicting Plaintiffs will recover against THOMPSON COUNTRY for negligently failing to warn.

27. Without pleading any factual basis for holding the in-state retailer liable, Plaintiffs has failed to plead any specific actionable conduct against this local defendant, THOMPSON COUNTRY. In the absence of an exception under the product liability statute that would permit liability against this retailer, improper joinder exists.

### B.   AMOUNT IN CONTROVERSY.

28. Plaintiffs do not specify the maximum amount of damages sought in their Original Petition. However, Plaintiffs seek the recovery of damages for the wrongful death of a minor.[18] In addition, Plaintiffs seek the imposition of exemplary damages. With the inclusion of exemplary damages, it is clear that the amount in controversy exceeds $75,000.00.

---

[17] Exhibit A., ¶ 32.
[18] *Id.*

29. The Fifth Circuit under similar circumstances found it was facially apparent that damages sought by plaintiff in an action to remand exceeded the jurisdictional amount where the case involved, *inter alia*, a claim for wrongful death and denied the remand. *De Aguilar v. Boeing Co.*, 11 F.3d 55, 57 (5<sup>th</sup>Cir. 1993). Thus, it is only where it is ***not*** facially apparent that the damages exceed the jurisdictional amount, does it become necessary to consider affidavits rebutting the existence of the jurisdictional amount. *Id.* at 57. As the *Boeing* precedence has set forth, because the instant case involves, *inter alia,* a claim for wrongful death, it is facially apparent that the jurisdictional amount is met.

30. Moreover, "[p]unitive damages, can be included to reach the amount in controversy requirement if, under the governing law of the suit, they are recoverable." *Bell v. Preferred Life Assur. Society of Montgomery, Ala.,* 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943); *Dow Agrosciences LLC v. Bates,* 332 F.3d 323, 326 (5th Cir.2003); *St. Paul Reinsurance Co. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir.1998). Courts have held that even when the amount of punitive damages is unspecified, the request for punitive damages will effectively raise the amount in controversy above $75,000 when the applicable statutory cap on punitive damages allows for an award greater than $75,000. *Vincent v. Fresenius Med. Care of N. Am.,* No. SA-03-CA-934-XR, 2003 U.S. Dist. LEXIS 23399 at * 9 (W.D.Tex.2003) and *Lite-Martin v. Southwest PCs, L.P.,* No. SA-03-CA-867-XR, 2003 U.S. Dist. LEXIS 19446 at * 9 (W.D.Tex.2003).

31. In both *Vincent* and *Life-Martin,* plaintiffs brought suit in Bexar County courts alleging discriminatory employment practices in violation of the TEXAS LABOR CODE. *Vincent,* 2003 U.S. Dist. LEXIS 23399 at *2-3; Life-Martin,* 2003 U.S. Dist. LEXIS 19446 at *2-3. In *Vincent,* plaintiff sued for an unspecified amount including damages for lost wages, mental anguish, attorneys' fees and punitive damages. *Vincent,* 2003 U.S. Dist. LEXIS 23399 at *2-3. In *Life-*

*Martin,* plaintiff sought actual damages of $30,000, $20,000 for mental anguish and punitive damages and $24,000 in attorneys' fees (total: $74,000). *Life-Martin,* 2003 U.S. Dist. LEXIS 19446 at *2-3. In both cases, defendants removed the case and, in both cases, plaintiffs sought to remand the case claiming that the amount in controversy was less than the $75,000. The court held that removal was proper in both cases.

32. The court indicated that even if a plaintiff did not specify the amount of damages it sought, or specifically pled less than $75,000, the amount in controversy requirement can still be satisfied when a statutory cap applies to the plaintiff's claim and that cap allows for an award greater than $75,000. *Vincent,* 2003 U.S. Dist. LEXIS 23399 at *10; *Life-Martin,* 2003 U.S. Dist. LEXIS 19446 at *10. Section 21 of the TEXAS LABOR CODE provides for a cap on compensatory and punitive damages. Considering the statutory cap, the Court reasoned that ".... no applicable statute appears to limit Plaintiff's recovery to an amount below $75,000 as a matter of law. Although section 21.2585 caps Plaintiff's compensatory and punitive damages, the <u>applicable cap well exceeds the $75,000 minimum.</u>" *Vincent,* 2003 U.S. Dist. LEXIS 23399 at *10; *Life-Martin,* 2003 U.S. Dist. LEXIS 19446 at *10 (emphasis added). Accordingly, the Court held in both cases that it was "facially apparent" that the amount in controversy in each state court action exceeded $75,000 and that removal was proper. *Vincent,* 2003 U.S. Dist. LEXIS 23399 at *11; *Life-Martin,* 2003 U.S. Dist. LEXIS 19446 at *11.

33. Exemplary damages are subject to the cap found in Section 41.008 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE which provides that:

> (b) Exemplary damages awarded against a defendant <u>may not exceed an amount equal to the greater of:</u>
>
> (1)(A) two times the amount of economic damages; plus

> (B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; *or*

(2) $200,000.

TEX. CIV. PRAC. & REM. CODE §41.008(b) (emphasis added). Therefore, even assuming the jury awarded nothing more than $10,000 in actual damages, the jury could award (and the court could render a judgment) up to $200,000 in exemplary damages. Put differently, "the applicable cap well exceeds the $75,000 minimum." *Vincent*, 2003 U.S. Dist. LEXIS 23399 at *10; *Life-Martin*, 2003 U.S. Dist. LEXIS 19446 at *10.

34.     Finally, it is "facially apparent" that the claims exceed $75,000. *White v. FCI USA, Inc.*, 319 F.3d 672 (5th Cir. 2003). In examining the complaint to determine whether it is "facially apparent" that the claims exceed the jurisdictional amount, the test is "whether the amount of the claim will more likely than not" exceed $ 75,000. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335-1336 (5th Cir. 1995). The purpose of the "facially apparent" test is to prevent the possibility of federal removal from acting as an encouragement for a plaintiff to conceal the amount in controversy. *Hines v. A C & S, Inc.*, 128 F.Supp.2d 1003, 1008 (N.D.Tex. 2001). When a plaintiff in a personal injury lawsuit does not specify the amount in controversy, as happened here, the defendant is placed in the impossible position of guessing whether a federal district judge will subsequently determine that the nature of the injuries are such that it was "facially apparent" from the petition that the amount in controversy was in excess of the jurisdictional minimum. *See e.g. Evett v. Consolidated Freightways Corp.*, 110 F. Supp. 2d 510 (E.D.Tex. 2000). If the defendant waits to have an express statement of the amount in controversy, the court after removal could then deem the removal as untimely since it was not filed within thirty days of receipt of the complaint. Thus, if a plaintiff maintains that the amount of controversy is not met, the burden properly shifts to the plaintiff to so stipulate. *See, e.g., Callaway v. BASF*

*Corp.*, 810 F. Supp. 191, 193 (S.D.Tex. 1993) (case not remanded on ground that amount in controversy did not meet jurisdictional amount considering plaintiff expressly declined to stipulate to damages less than jurisdictional amount and sought both actual and punitive damages); *Johnson v. Dillard Dept. Stores, Inc.*, 836 F. Supp. 390, 395 (N.D.Tex. 1993) (case not remanded where plaintiff failed to submit a sworn, unrebutted affidavit indicating that the requisite amount in controversy is not present, refused to stipulate that her damages did not exceed the jurisdictional amount, and refused to waive any damages in excess of that amount).

35. Consequently, it is facially apparent that the amount in controversy of Plaintiff state court claim exceeds $75,000.00, and is thus sufficient for this Court to exercise jurisdiction.

## III.
### TIMELINESS

36. By reason of the foregoing, Defendant FORD MOTOR COMPANY is entitled to have this cause removed to the United States District Court for the Southern District of Texas, Houston Division. Counsel for FORD MOTOR COMPANY would show that this removal is timely sought and that this notice was filed within thirty (30) days of receiving notice of suit. Additionally, it has been less than one year since this action was originally commenced. See 28 U.S.C. §1446(b).

## IV.
### CONCLUSION

37. All conditions and procedures for removal have been satisfied. FORD MOTOR COMPANY attaches copies of all process, pleadings and orders from the Grimes' District Court's file as Exhibit "E." FORD MOTOR COMPANY will also promptly give written notice of the filing of this notice of removal to the Plaintiff, as well as promptly file a copy of the Notice of Removal with the Clerk of the District Court of Grimes County, Texas.

WHEREFORE, PREMISES CONSIDERED, Defendant FORD MOTOR COMPANY respectfully requests that this action now pending against it be removed from the 12th Judicial District Court of Grimes County, Texas, to this Honorable Court for trial and determination of all issues.

Respectfully submitted,

GRANT T. MCFARLAND (Attorney-in-Charge)
Federal Bar No. 19204
State Bar No. 13598200

DAMOND K. GARZA
Federal Bar No. 619843
State Bar No. 24045925

PRICHARD, HAWKINS, MCFARLAND &
  YOUNG, L.L.P.
10101 Reunion Place, Suite 600
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Telecopier

**ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY**

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document has been forwarded via certified mail return receipt requested this ___6th___ day of March 2007, to the following counsel of record:

Ray Chester
Travis C. Barton
Jessica B. Palvino
McGinnis, Lochridge & Kilgore, L.L.P.
600 Congress Avenue, Suite 2100
Austin, Texas 78701

GRANT T. MCFARLAND
DAMOND K. GARZA